## THOMAS W. DuBois

*v.*

## MARIA WATERMAN et al.

[Submitted June 20th, 1916.   Decided July 18th, 1916.]

1. One in peaceable possession may maintain an action to quiet title to land.

2. The recitals of an attestation clause of a will that the testator signed, sealed, declared and published it in the presence of two attesting witnesses, raises the presumption that all of these acts were done, as the *signing* was done, at one and the same time.

3. A duly-exemplified copy of a will proved in another state is admissible in evidence to establish the title to land.

4. Under the provisions of the will in question—*Held*, that the testator's wife might, if necessary for her maintenance, convey a fee in lands in which she was given a life estate.

5. Under the evidence in this case, the conveyance of the homestead in fee cannot be upheld.

---

On bill, &c.

*Mr. Austin H. Swackhamer,* for the complainant.

*Messrs. French & Richards,* for the defendants.

BACKES, V. C.

This is a bill to quiet title to land.   The property formerly belonged to Thomas DuBois, who died leaving a last will and testa-

ment, admitted to probate in Gloucester county in 1897, which, after directing payment of debts and funeral expenses, proceeds as follows:

"I give, devise and bequeath to my beloved wife Elizabeth Amanda DuBois, the free use (of the Principal if necessary for her maintenance) and improvements Rents profits and income of all the rest, residue and remainder of all my Estate, real personal and mixed, wherever or however the Same is or may be Situated, and including therewith the free use and improvements, rents profits and income of Such other Estate I may hereafter acquire of which I Shall die Seized possessed of and entitled to at the time of my decease, for and during the term of her Natural life. To have and to hold the Same with all the rights and privilege thereof to her the Said Elizabeth Amanda DuBois for and during the term of her natural life."

Upon the decease of the widow, the homestead, the land in question, situate in Franklinville, Gloucester county, was devised to a son Alton Alonzo DuBois, who died, leaving a will devising his estate to his widow, the defendant, now Maria Waterman. The testator, Thomas DuBois, had two other sons, William H. and Charles E., and, subject to the life estate of his widow, he devised to William H. absolutely a half-acre lot with the buildings thereon, situate in Franklinville; and to Charles E. a house and lot in the same village for life, with the remainder to the four children of William H. The rest and remainder of his estate he gave to his three sons in equal shares, except as to Charles E., who was given an estate for life, with remainder over to two sons of William H., one of whom is the complainant. The personal property was insufficient to pay the testator's debts, and all of the lands not specifically devised, as above indicated, were sold to defray them. William H. and Charles E. DuBois are dead, and whatever of the estate remains, except the homestead, now in question, is owned by the family of William H. DuBois, who died intestate. Three or four years ago the life tenant mortgaged the homestead to her son William H. for $2,-100, and by deed dated November 20th, 1915, she conveyed the equity of redemption to the complainant. The complainant is in peaceable possession, and his right to invoke the jurisdiction of this court to quiet his title cannot be denied. *Ward* v. *Tallman, 65 N. J. Eq. 310; Fittichauer* v. *Metropolitan Fire Proof-*

*ing Co., 70 N. J. Eq. 429.* His right to relief, however, depends upon the soundness of his claim that he owns an estate in fee-simple; and unless this estate is established the bill must be dismissed. His title in fee hinges upon whether the life tenant had the power of sale, and the further inquiry whether the deed to the complainant was executed in the exercise of that power, thereby defeating the devise over. Both must be resolved in favor of the complainant before he can succeed as against the remainderman, Mrs. Waterman.

A preliminary question is raised as to Mrs. Waterman's title to the remainder. Her late husband died in the State of Rhode Island, where his will was admitted to probate, a duly-exemplified copy of which, and of the decree of probate, were filed and recorded in the office of the surrogate of Gloucester county (*P. L. 1915 p. 605*) and offered in evidence. The will was signed by the testator and attested by two witnesses. The attestation clause reads:

"Signed, sealed, declared and published by the said Alton A. DuBois as and for his last will and testament in presence of us, who, at his request, and in his presence, and in presence of each other, have subscribed our names as witnesses hereto."

The points made are that it does not disclose that the signature of the testator was made or acknowledged by him in the presence of two witnesses who were present at the same time, and further, that it does not appear that the testator declared the paper to be his last will in the presence of those witnesses present at the same time. The clause certifies that the testator *signed* the document in the presence of the two witnesses, and, as it bears only one signature of his, the inference is inevitable that both were then present. The collocation, conjunctively, of "signed, sealed, declared and published," raises the presumption that all of these acts were done as the one of necessity must have been. An attestation clause, substantially like the present one, was held to be sufficient evidence *prima facie* of the execution of a will in compliance with the requirements of our statutes. *Allaire* v. *Allaire, 37 N. J. Law 312; affirmed, 39 N. J. Law 113.* The exemplified copy was properly admitted in evidence and shows title in the defendant.

The provision of the will above quoted gives an interest for life to the widow in all of the estate of the testator, with the right to use the principal, if necessary, for her maintenance. That implies a power of sale. It is suggested that the term "principal" is inappropriate to real estate, and that the testator meant the principal of his personal property; but this is refuted by the fact that there was no, or little of, personal property to which it possibly could apply. Inartificially as the will was drawn, it plainly indicates that the testator's wife was the first and foremost object of his solicitude. Whatever he left he intended should be at her command and disposal for her subsistence. To place any other construction upon the interpolation of "the principal, if necessary, for her maintenance" would be to ignore and disregard the testator's most sacred wish and desire.

This brings us, then, to the main question debated on the argument and in the briefs of counsel, Was the conveyance of the homestead to the complainant a *bona fide* exercise of the power of sale? At the time the deed was executed, the life tenant was ninety-two years of age. The rent from the homestead brought in very little, and a meagre income was derived from the other properties—three tenements—which, under the will, will eventually go to the complainant and his brothers and sisters. All were in a dilapidated condition. The complainant had charge of these properties, attending their letting and the collection of the rents. Outlays of money in repairing the four houses, made by him shortly before the deed was delivered, brought his grandmother's account in debt to him somewhat in excess of $100. He says he took the deed in payment of this debt, but the circumstances do not bear him out. The property was worth $2,200, according to his estimate, and was, as he understood, subject to a mortgage of $2,100, with three years' accumulated interest, held by his father's estate. The value of the life estate, he states, was not taken into consideration by him, and his explanation for taking the deed is that when his expenditures had grown in amount he began to want something, and that his grandmother offered him the homestead for the debts he had paid to keep her; that it was the only thing that was offered him for security; that that was all she had to pay

with; and that he took it in about the same way that a mortgage would be given to a person to whom a debt was owing.

It is not necessary for the purpose of a decision to consider whether the life tenant had authority under the will to give a deed in discharge of a past due indebtedness incurred for her maintenance, or whether expenditures for repairs to the houses, inasmuch as they conserved the source of her income, were for her maintenance, because it is apparent that at most the deed was taken as security only and in effect is a mortgage, defeasible upon payment of whatever may be owing; and I even hesitate to give the transaction that dignity. If the complainant actually wanted to be secured by his grandmother, and she intended that he should be, it is hardly likely that they would have decided upon the homestead, in which there was absolutely no value, because overburdened by mortgage, as the complainant understood it. A deed or mortgage upon the three tenement-houses would have been a better assurance. The negotiation between the two has none of the *indicia* of a sale. Nothing was sold, because there was nothing to purchase, and if we assume, as we must, that both parties understood the property to be mortgaged beyond its value, then the execution of the deed was a shallow form transmitting an empty title and in no sense a legitimate use of the power of sale. This power was intended by the testator to be exercised by his widow, within limitations, only when it would enure to her advantage, and she cannot be permitted to defeat the devise over by a mere simulation.

There is another aspect in which the case is to be viewed. The estate of the complainant's father, as we have seen, holds the mortgage on the homestead which, it is asserted, was given for maintaining the life tenant. Why the mortgage was given on the homestead alone, and the reason for not including the other properties, is too obvious for comment. The deed to the complainant was a shift, and to uphold the conveyance of the barren legal title as an execution of the power of sale, would bar the defendant from contesting the validity of the mortgage, and foreclose her from a judicial inquiry into the amount, if any, of the debt for which it is claimed her estate is charged.

The complainant, if anything, is an equitable mortgagee, and not the owner of the fee in the land in question. The title upon which he rests his right to a decree is not made out and the bill will be dismissed, with costs.